In re MILLARD'S, Inc.

CENTURY BLDG. CO. v. GOETZ.

No. 4296.

Circuit Court of Appeals, Seventh Circuit.

June 4, 1930.

Rehearing Denied July 3, 1930.

Edgar L. Wood and John C. Warner, both of Milwaukee, Wis., for appellant.

Michael Levin, of Milwaukee, Wis., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge.

The referee's memorandum and opinion are as follows:

"In the above case the Receiver and Trustee occupied the premises in question from January 28, 1929, to March 31, 1929. The premises had been occupied by the bankrupt under a lease in which the rental provisions were as follows:—From November 1, 1925, to January 1, 1927, at the rate of $1250 per month; for the year 1927 the annual rental was $18,000; for the year 1928 the annual rental was $20,000; for the year 1929 the annual rental was to be $22,000. The owner of the premises makes a claim for rent for occupancy by the Receiver and Trustee at the rate of $22,000 per annum; the amount provided in the lease for 1929, which would be at the rate of $1833.33 per month. The premises were not used by the Receiver or Trustee to conduct the business, but were used only for storage purposes. The owner made no attempt to get possession of the premises for a new tenant by notice to the court until early in March, 1929, and on

March 8, 1929, filed a petition to have the Receiver vacate the premises. The Trustee vacated the premises on March 31, 1929, and the only question is the reasonable rental value of the premises under all the circumstances in this case. Had the Receiver vacated the premises the next day after taking possession, the same would have been vacant for at least sixty days without any rental earnings, because the record shows it took thirty days to get the place in condition for the new tenant, and a new tenant was not available until after April 1, 1929. The record shows that the new tenant, who was the owner himself in the form of a corporation, went into possession of the premises on May 1, 1929.

"I am of the opinion that in determining the reasonable rental value of the premises during the time in question, the fact that no rent would have been paid for sixty days if the Receiver had vacated at once after appointment and the fact that no business was conducted by the Receiver and Trustee must be considered, and I find that a rental charge at the rate of $1250 per month is fair and reasonable. This is the minimum charge under the lease and that being fixed by the owner for one year and two months for the bankrupt, who was conducting a business, I can see no reason for a larger rental charge to the Receiver and Trustee, who used the place for storage only."

There followed an order that the trustee pay appellant $2,666.64 as rent from January 28, 1929, to March 31, 1929.

Appellant, claiming that the rent should be at the rate of $22,000 a year, or $3,849.99 for the time in question, sought review of the referee's order, and upon such review the District Court affirmed the order. The appeal is from the order of affirmance.

That appellant, the landlord, is entitled to an allowance of reasonable rental for the time the premises were occupied by the receiver and trustee, is not denied. The sole question is: What is such reasonable rent?

█ While these officers are not bound by the terms of a lease under which the bankrupt was occupying the premises, the rate fixed by such lease will presumptively be regarded as the fair rental value, subject to such modification as the evidence of witnesses and of facts and circumstances may require. Gardner v. Gleason (C. C. A.) 259 F. 755; In re Crawford Plummer Co. (D. C.) 253 F. 76; Fleming v. Noble (C. C. A.) 250 F. 733; In re Nathanson (D. C.) 24 F.(2d) 760.

██ The premises consist of a large storeroom and basement in a new building costing $900,000, on a prominent corner of an important retail district of the city of Milwaukee. While the initial year's rent was at the rate of $1,250 a month, the tenant had exercised his option of renewal at the progressively higher rates of the lease, that for 1929 being $22,000. The landlord supplemented the evidence afforded by the lease by the testimony of four witnesses, whose qualifications to testify to the rental value of Milwaukee business property was conceded, and whose testimony was that the fair rental value of this property during the time in question was from $22,500 to $27,000 a year. No witness testified that it was any less. The receiver testified that for his purpose it was not worth more than $500 a month; and some other witnesses stated that they had rented suitable property in different parts of the city for temporary purposes, such as closing out a stock, at as low as $10 a day. Other witnesses testified to a much lower valuation for storage purposes. These are no test. It may happen that where property is temporarily vacant, the owner may be willing to make a special contract for a short time at small rental.

The fair rental value of such property cannot be tested by its value for such a use or for storage purposes. If storage was the only purpose of retaining it, the stock might have been taken to distinctly storage premises at very much lower rate. Nor is it material that some time would be required to prepare the property for another tenant, or that another tenant was not immediately on hand to take the premises. There was no basis in the facts, nor under the law, for applying the first year's rent rate under the lease to the period in question. The tenant had paid $18,000 for 1927, $20,000 for 1928, and had begun the 1929 period at $22,000.

The landlord's earlier effort to regain possession of the property was resisted by the receiver and trustee until such time as they were through with it.

We find nothing in the facts and circumstances appearing to justify the conclusion that the reasonable rental value of the premises was less than the amount stipulated for this period of the lease. The referee did not pass upon a controverted state of facts. The evidence upon the material question was all in favor of the landlord's contention, and nothing appearing to indicate that the evidence was unreasonable and incredible, the order fixing the rent should have followed the evidence.

The lease provided for monthly rent payments in advance. There is nothing in the

record to indicate that the rent due January 1, 1929, for that month was not paid, and if paid the estate was entitled to the benefit of the payment for so much of that month as the receiver was in occupancy.

The order in respect to amount of the rent is reversed, with direction to allow rent for February and March, at the rate of $22,000 per year, or $3,666.66.