## GREEN v. FINNIGAN REALTY CO. *
### No. 6997.

Circuit Court of Appeals, Fifth Circuit.
April 26, 1934.

Everett L. Looney, of Austin, Tex., for appellant.

E. H. Suhr and Chas. W. Bell, both of Houston, Tex., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

Green, as trustee in bankruptcy, appeals from a judgment holding him to pay to Finnigan Realty Company as owner of premises in Houston, Tex., rent for May and June, 1932, during which he occupied them, at the rate fixed by the bankrupt's lease instead of at a reasonable rate found and applied by the referee. The essential facts are that the bankrupt corporation held the premises under a sublease assented to by the original lessor, Finnigan Realty Company, for a term of nine years to end December 31, 1938, at a monthly rental of $1,750 payable in advance to Finnigan Realty Company. Adjudication on a voluntary petition was made April 20, 1932, and Green as receiver took charge, with authority to continue bankrupt's mercantile business. On May 6, 1932, he was made trustee with like orders. A composition was confirmed July 1, 1932. The rent for April was paid, presumably in advance by the bankrupt. So soon as Green was appointed receiver, he, under authority of the court, notified Finnigan Realty Company by telegram that he disaffirmed any lease to the bankrupt, but would consider continuing to occupy at a reduced rental to be submitted to the court. No reply coming, he wrote on April 28th that he disaffirmed the lease and would only occupy at the court's will after April 30th, and at such rental as the court should find to be reasonable, and asked for a proposition. On May 6th, as trustee, he repeated the letter. On May 4th Finnigan Realty Company had written from New York that it had no offer to make, that the receiver had no power to affirm or disaffirm the lease, but if the trustee should validly disaffirm it he would have to surrender the property and meanwhile would be liable for the rent fixed by the lease. On

*Petition for rehearing denied June 8, 1934.

May 10th it wrote in reply to the trustee's letter of May 6th that it would consent to his occupying the premises only on the basis of $1,750 per month. No agreement was reached. Neither in that letter nor thereafter was any demand for possession made on the trustee, and no petition for possession was made to the court. Instead, a claim was filed for $3,500 for the two months' rent as expenses of administration. Rents had greatly fallen in Houston since the lease was made, and the reasonable rental value in 1932 of the premises was $1,000 per month, at which figure the lessor made a new lease of them beginning July 1, 1932, when the trustee yielded possession. The referee reduced the claim to $2,000 and allowed it.

█ A leasehold may be a valuable asset of an estate, or because of its rent rate or other conditions it may be burdensome and undesirable. "It has long been a recognized principle of the bankrupt laws that the assignees were not bound to accept property of an onerous or unprofitable character." American File Co. v. Garrett, 110 U. S. at page 295, 4 S. Ct. 90, 94, 28 L. Ed. 149. Of a seat on a stock exchange which involved burdens on its owner it was said in Sparhawk v. Yerkes, 142 U. S. at page 13, 12 S. Ct. 104, 106, 35 L. Ed. 915: "They (the assignees) were not bound, however, to accept property of an onerous and unprofitable nature, which would burden instead of benefiting the estate, and they could elect whether they would accept or not, after due consideration and within a reasonable time; while, if their judgment was unwisely exercised, the bankruptcy court was open to the creditors to compel a different conclusion." Under the present Bankruptcy Act, the trustee ought to get the authority or ratification of his court. Lincoln National Life Ins. Co. v. Scales (C. C. A.) 62 F.(2d) 582. A receiver also, whether in bankruptcy or in equity, although he takes no title has a similar liberty of electing under authority of his court within a reasonable time whether to adopt or reject burdened property or any executory contract of the insolvent. "Upon taking possession of the property, he was entitled to a reasonable time to elect whether he would adopt this contract and make it his own, or whether he would insist upon the inability of the company to pay, and return the property in good order and condition; paying, of course, the stipulated rental for it so long as he used it." Sunflower Oil Co. v. Wilson, 142 U. S. at page 322, 12 S. Ct. 235, 237, 35 L. Ed. 1025. Numerous cases since have applied these principles.

See 3 Remington, Bankruptcy, §§ 1215 and 1216, and cases cited. Green, whether as receiver or as trustee, the court consenting, could within a reasonable time decline to accept the leasehold estate and to become bound by the covenants of the lease, though liable for the rental named in the lease for his occupancy under it pending his decision. He decided at once, and all rent for the period of indecision has been paid. On April 30th, having rejected the lease and the time for which rent had been paid having elapsed, he should have surrendered possession. The leasehold remained the bankrupt's, if not terminated for some cause other than its rejection by the receiver. The bankrupt, however, appears to have abandoned it.

█ We deny the contention that the court's receiver and trustee had still another period of reasonable time during which he might retain the premises to wind up the bankruptcy business. The court through its officer having chosen to reject the lease, had neither rights nor obligations under it. In strict law it had no better right to occupy the premises against a lawful demand of the person entitled to possession than a private person would have. It is true that the owner's remedy is different. He could not without coming into contempt of court eject the court's officer by force, nor proceed against him for a forcible detainer, nor throw the property in the custody of the court out of doors; but he could at once petition the court for possession and the court would be bound to do justice according to the circumstances. See In re Chambers, Calder & Co. (D. C.) 98 F. 865. We reject, also, the contention that Green was a tenant holding over, and liable at the lessor's election to be treated as a tenant under the lease or as a trespasser. Such is indeed the general rule. 16 R. C. L., Landlord & Tenant, §§ 684, 685; 35 C. J., Landlord & Tenant, § 167. But the right of a receiver or a trustee in bankruptcy within a reasonable time to reject the leasehold results after its exercise in disconnecting him entirely from the lease. He thereafter neither holds nor holds over as a tenant under it. In Willison v. Watkins, 3 Pet. 43, 7 L. Ed. 596, while recognizing the principle that one is estopped to deny the title of another under whom he obtained possession without surrendering possession, it was yet held: "When a tenant disclaims to hold under his lease, he becomes a trespasser, and his possession is adverse, and as open to the action of his landlord, as a possession acquired originally by wrong. The act is conclusive on the tenant; he cannot revoke

his disclaimer and adverse claim, so as to protect himself, during the unexpired term of the lease; * * * the relation of landlord and tenant is dissolved, and each party is to stand upon his right." Much more should this be true as to the receiver whose occupancy under the lease was but tentative and whose right to disclaim it was perfect. The lessor had after the disclaimer a right to possession which the receiver was estopped to deny, but not a right, omitting to apply to the court for possession, to enforce the rental of the lease. The receiver like any other trespasser becomes liable to pay the reasonable worth of the premises for occupancy, whether more or less than the rent under the lease, together with any special damages occasioned by his detention of them. The rate of rental fixed by the disclaimed lease is presumably reasonable, but it is not conclusively so. In re Sherwoods, Inc. (C. C. A.) 210 F. 754, Ann. Cas. 1916A, 940; Fleming v. Noble (C. C. A.) 250 F. 733; Gardner v. Gleason (C. C. A.) 259 F. 755; In re Nathanson (D. C.) 24 F.(2d) 760; In re Millard's, Inc. (C. C. A.) 41 F.(2d) 498; Jensen v. Sparkes (C. C. A.) 53 F.(2d) 433. We think, moreover, in this case that the fair inference of fact is that Finnigan Realty Company did not demand possession because it did not wish a vacant building and preferred that the trustee should occupy it subject to its contention about the amount of rent to be paid. If there was consent, express or implied, to the trustee's occupancy, there arose as to him a new tenancy at will or by sufferance at an implied reasonable rent, and not a tenancy by holding over under the old lease at the rental fixed by it.

We note the statement in Gaston v. Rutland Railroad Co. (C. C. A.) 35 F.(2d) 685, that in circumstances similar to this case a receiver, if he retains possession, must pay the lease rental. The force of the case as an authority to that effect is slight, because the decision was that the receiver should accept and not reject the lease. There was no occasion to decide what he would owe in case his rejection of the lease had stood.

The undisputed evidence here is that the reasonable rental value in 1932 was $1,000 per month. That also was the rent fixed in the new lease beginning July 1st. The owner lost not a day's rent because of the detention of the building. The referee's allowance of $2,000 for the months of May and June was correct.

The judgment of the District Court must be reversed.